AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of Texas

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | |
| OD Matthews, IV (01), Nicholas Vagrosky (02) | ) | |
| Miranda Taylor (03), Wesley Flores (04) | ) | Case No.  2:26-MJ-72 |
| Johnathan Rivera (05) and Tanner Pitts (06) | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 9 2026

CLERK, U.S. DISTRICT COURT
By_____
Deputy

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___a date unknown to 4/9/26___ in the county of ___Potter and elsewhere___ in the ___Northern___ District of ___Texas___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846 | Conspiracy to Possess and Possession with Intent to Distribute of Fentanyl |

This criminal complaint is based on these facts:

see attached affidavit in support of complaint.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Fernando Burga, DEA SA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (specify reliable electronic means).

Date: ___4/9/2026___

_____
*Judge's signature*

City and state: ___Amarillo, Texas___

Lee Ann Reno, U.S. Magistrate Judge
_____
*Printed name and title*

No. 2:26-MJ-72

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Fernando Burga, being sworn, depose and state as follows:

1)      I am a Special Agent (SA) with the Drug Enforcement Administration (DEA).

2)      I am assigned to the DEA's Amarillo Resident Office (ARO).  I was hired as a Special Agent with DEA in April 2023, and completed DEA Basic Agent Training Academy, located in Quantico, Virginia in August 2023.  In connection with my duties and responsibilities as a Special Agent, I have received extensive training in the field of narcotics trafficking investigations, including but not limited to, conducting surveillance, smuggling, undercover operations, methods of packaging, utilizing confidential sources, executing arrest and search warrants. Prior to my employment with the DEA, I was a police officer with the Punta Gorda Police Department for 6 years. During that time, as a Patrol Officer assigned to the canine unit. I made numerous narcotics related arrests and assisted in narcotics investigations.

3)      This affidavit is made in support of a complaint and arrest warrant for Nicholas VAGROSKY, Miranda TAYLOR, Wesley FLORES, O D MATTHEWS, Jonathan RIVERA, and Tanner PITTS.  I am familiar with the information contained in this affidavit based upon my own personal investigation, as well as conversations with other law enforcement officers involved in this investigation.

4)      On or about December 10, 2025, agents utilized a confidential source to purchase 100 fentanyl pills from Nicholas VAGROSKY. VAGROSKY directed the CS to go to VAGROSKY's residence located at 4312 S. Ausitn St., Amarillo, Texas. The CS arrived at the residence and VAGROSKY greeted the CS outside the residence. The CS and VAGROSKY walked into the residence. VAGROSKY informed the CS that VAGROSKY's plug was on the way to deliver the fentanyl pills.

5)      Moments later, a black BMW bearing Texas registration VKN3750 pulled into the alleyway and parked behind VAGROSKY's residence. The CS provided VAGROSKY with $1,200 in Official Advanced Funds. VAGROSKY then exited the residence and got into the front passenger seat of the BMW. Shortly thereafter, VAGROSKY got out of the BMW, walked back into the residence, and handed the CS a zip top bag containing "M30" fentanyl pills. Agents followed the BMW to a residence located at 5316 S. Fulton St. Agents observed the BMW pull into the alleyway and park behind 5316 S. Fulton St. Agents observed MATTHEWS get out of the BMW and walk into a shed located in the rear of the property. MATTHEWS was the individual that dropped off the fentanyl pills to VAGROSKY.

6) On March 25, 2026, agents intercepted a series of communications between Vagrosky, using Target Telephone 1, and an unidentified female, using (806) 340-2204. At about 8:10 p.m., UF7-1 called Vagrosky and asked, "Are you up?" Vagrosky said, "It won't be till tomorrow." The female responded, "Fuck...okay" and Vagrosky said, "Alright, I'll see ya." During the preceding conversation, agents believed the female asked, "Are you up" wondering if Vagrosky had received a shipment of fentanyl. Vagrosky explained that it won't be until the next day, meaning that he is supposed to receive fentanyl from his source of supply the following day.

7) On March 26, 2026, agents intercepted a series of communications between Vagrosky and an individual using telephone number (806) 646-1736 (hereinafter, "1736"). The individual sent a text message that said, "Yo" and right after sent another text message that said, "Yu good." Vagrosky responded, "Not yet." The individual said, "Will it be real soon? I got paid." Vagrosky responded, "It'll be later." a. During the preceding electronic communications, I believe the unidentified individual advised he/she got paid and were wondering if Vagrosky had any drugs to sell. Vagrosky advised that it be later, which indicated that he would be getting resupplied by his source of supply soon.

8) Based on the intercepted communications, agents established physical surveillance at the Traveler Motel located at 4420 Canyon Dr., Amarillo, Texas. Agents observed Vagrosky's Dodge Ram parked east side of parking lot. At approximately 1:22 p.m., agents observed Vagrosky getting into the driver's seat and Taylor getting into the front passenger seat of the Dodge Ram. Shortly thereafter, the Dodge Ram exited the motel parking lot and began to travel to Clovis, New Mexico. Agents previously identified Wesley Flores, who resides in Clovis, as a source of supply for Vagrosky and Taylor.

9) At approximately 3:30 p.m., agents observed the Dodge Ram pull into the parking lot of the Hillcrest Zoo located at 1208 S. Sycamore Street, Clovis, New Mexico. Shortly thereafter, agents observed a gray Mercedes Benz bearing New Mexico registration CFXC26 pull into the parking lot. Flores is known to drive this Mercedes Benz, and agents have observed Flores utilizing this Mercedes Benz to meet with Vagrosky and Taylor. The Mercedes Benz drove and parked beside the Dodge Ram next to the driver's side door. Agents observed Vagrosky getting out of the Dodge Ram and getting into the front passenger seat of the Mercedes Benz. Moments later, Vagrosky got out of the Mercedes Benz and got back into the Dodge Ram. Based on previous behaviors and training and experience, this behavior is consistent with a drug transaction.

10) As Vagrosky and Taylor traveled back to Amarillo, agents intercepted several conversations over Target Telephone 1 that indicated Vagrosky had been resupplied with drugs and would be ready to meet with customers as soon as he got back to the motel. At approximately 5:43 p.m., agents intercepted a wire communication between Vagrosky, using Target Telephone 1, and a male subject, using telephone number (806) 367-2522 (hereinafter, "2522"). The male called

and Vagrosky and stated, "What's up. What you up to?" Vagrosky responded, "Heading back to my motel." The male stated, "Oh, yeah, you good yet or no." Vagrosky responded, "Yeah." The male said, "Still got some powder or what?" Vagrosky responded, "Yeah." The male stated, "You want to meet up real quick or no?" Vagrosky responded, "Uh, I have one person maybe two. I think I know for a fact just 1 because this dumb ass fucking dropped off at my hotel without me being there but uh if it's just him then give me a minute. I'm almost back to my hotel probably like 5-10 minutes away and then I gotta deal with him and then I can meet you at the Circle K or something." The male stated, "Alright, let me know." At approximately 5:53, the male sent an electronic communication to Vagrosky stating, "Imma head towards that way." Vagrosky responded, "Bet." I know that "bet" is a common slang term meaning, "yes," "okay," or "for sure." During the preceding wire and electronic communications, I believe the Vagrosky picked up fentanyl powder from Flores in Clovis, New Mexico and now has fentanyl powder to distribute to his customers. In the conversation, the unidentified male and Vagrosky are coordinating a drug transaction at Circle K. Vagrosky will deliver fentanyl powder to the unidentified male soon.

11) Following the wire and electronic communication, agents established surveillance at Circle K located at 2801 SW 45th Avenue, Amarillo, Texas. At approximately 6:07 p.m., agents observed Vagrosky and an unknown male get into Dodge Ram and leave the motel. At approximately 6:11 p.m., the Dodge Ram arrived at Circle K and parked. Moments later, agents observed an unidentified male get out of a Patrick's Heating & Air van and walk over to the front passenger side window of the Dodge Ram. Agents observed the front passenger window go down and then observed the unidentified male walk away. The unidentified male got back into the van and exited the parking lot. Agents followed the van as it exited the parking lot but were unable to maintain physical surveillance on the van due to traffic and a traffic stop was unable to be conducted. Based on the series of intercepted communications and the behavior consistent with a drug transaction, agents believe that Vagrosky delivered fentanyl powder to the unidentified male at Circle K.

12) Later that evening, agents intercepted a wire communication between VAGROSKY and TAYLOR. TAYLOR called VAGROSKY and said, "How did you let that happen. Where you nodded off or something." VAGROSKY responded, "No, my bag was sitting next to me, and he got up like he was going to get a lighter and he grabbed my bag and ran out the door. I chased him all the way down the street until he jumped into a car and left. I was not nodded out or anything." TAYLOR said, "I was just wondering how he got it. Not only that, but I have also always told you that you need to keep a gram on you and put the other one up somewhere." VAGROSKY responded, "I had sold the other gram. I had 500 in my wallet." TAYLOR said, "How did you let him grab it from you." VAGROSKY responded, "It was in my bag, Miranda." TAYLOR said, "Where was your bag." VAGROSKY responded, "Sitting next to me. He grabbed my bag and

literally bolted out the door. Like he caught me off guard. I did not expect him to do that at all." TAYLOR said, "We are so fucked." VAGROSKY responded, "You just need to call Wesley and tell him someone robbed us. I have some money." TAYLOR said, there is no calling Wesley, we are fucked." VAGROSKY responded, "Miranda I still have some money in my Chime and stuff. You can call Wesley." TAYLOR said, "Oh my god, I'm not calling Wesley. Wesley is going to be like, so, you got robbed and what. We still owe him that money Nick." VAGROSKY responded, "Yeah, but we can pay it back just like we did before." TAYLOR said, "No, he's not gonna let me do that again Nick. He is not gonna let me do that again. This is not that kind of thing. He already explained that to me. I pay it all and he'll front me again. If I don't have the money to pay it off I'm shit out of luck." VAGROSKY responded, "You need to call Wesley and tell him we got robbed and that we have some money that was on Chime but they stole my wallet, they stole the powder, and fucking ran out." TAYLOR said, "Nick, why do you think it's Wesley's responsibility to take the fall for us getting robbed." VAGROSKY responded, "We can make his money back." TAYLOR said, "I'll call him. Goodbye."  Affiant knows the term "powder" is a common street term used by drug traffickers when referring to powder fentanyl.

12) During the preceding wire communication, Affiant believes that VAGROSKY had his wallet and fentanyl taken by someone that was in the motel room. VAGROSKY asked TAYLOR to call FLORES and inform FLORES that their money and powder had been stolen. VAGROSKY thought that FLORES may forgo the debt due to the circumstances. Based on the meeting with FLORES, the intercepted wire and electronic communications, it appears that FLORES is VAGROSKY and TAYLOR's source of supply for powder fentanyl. The intercepted communication also suggests that TAYLOR oversees VAGROSKY and directs VAGROSKY to conduct drug transactions on their behalf, while minimizing her direct interaction with customers and deals directly with FLORES. It appears that TAYLOR is higher up in the DTO than VAGROSKY.

8)      On March 27, 2026, during a court authorized wire and electronic interception, agents intercepted a series of wire communications between VAGROSKY and MATTHEWS. MATTHEWS directed VAGROSKY to go to 4301 S. Lipscomb St., Amarillo, Texas and to meet MATTHEWS' friend, who was later identified as Jonathan RIVERA. At approximately 4:33 p.m., agents intercepted a wire communication between Vagrosky, and OD Matthews, using telephone number (806) 421-3418. Vagrosky called Matthews and stated, "What's up, G." Matthews responded, "He is almost ready, bro." Vagrosky stated, "Okay, should I head that way." Matthews replied, "Do you remember where he stayed. It's like 43rd and Lipscomb." Vagrosky said, "Okay." Matthews responded, "But just wait real quick cause he is almost ready. He ain't made it back yet." Vagrosky stated, "And I sent that." Matthews responded, "I figure in 15 minutes for real." Vagrosky stated, "Alright, I'll wait 15 and then I'll head that way. And I shot that over to you also on CashApp." Matthews replied, "Alright, G. I appreciate you." Vagrosky said, "Alright later."

9)    Agents followed VAGROSKY to 4301 S. Lipscomb St., Unit B.  Agents observed a silver Honda Civic bearing Texas registration WHS0750 pull into the driveway. Agents observed RIVERA get out of the Honda and walk into 4301 Lipscomb unit B. Moments later, RIVERA walked out of the residence and handed VAGROSKY an item believed to be fentanyl pills. VAGROSKY then got back into his vehicle and started to travel back to the motel.

10)    As VAGROSKY traveled back to the Traveler's Motel, agents intercepted several conversations where Vagrosky stated, "just got berries" and "Yup bottom 30s". The terms "berries" and "30s" are common street terms that drug traffickers use when referring to fentanyl "M30" pills. VAGROSKY did not stop anywhere or meet with anyone else, which indicated that MATTHEWS coordinated a drug pickup between VAGROSKY and RIVERA.

11)    On April 6, 2026, at approximately 8:06 p.m., agents received a notification from a law enforcement database that Tanner PITTS' white Lincoln MKZ bearing Texas registration SPM0950 had been captured on a license plate reader at US 60 and Pondaseta Rd. This is the route that PITTS, VAGROSKY and TAYLOR take to travel to Clovis, New Mexico to meet with Wesley Flores.

12)    Following the notification, agents contacted the Clovis Police Department (CPD) narcotics unit and requested assistance. CPD drove by Flores residence and observed that Flores Mercedes Benz bearing New Mexico registration CFXC26 and a silver BMW SUV bearing New Mexico registration CHNL36 parked at Flores residence located at 53 Chapparal Ave., Clovis, New Mexico. CPD then established surveillance at the Allsup's located at 1401 N. Norris St., Clovis, New Mexico. This Allsup's is a well-known location where Flores has previously met PITTS.

13)    At approximately 9:34 p.m., agents received a GPS phone ping on Flores' telephone that showed Flores' phone to be near Farewell, Texas.

14)    At approximately 9:52 p.m., agents located PITTS' Lincoln parked at the Dollar General located at 1401 US 60., Friona, Texas. Shortly thereafter, agents observed Flores' silver BMW SUV pulling into the Dollar General parking lot. The BMW SUV parked next to PITTS' Lincoln. Agents then observed PITTS getting out of the driver's seat and getting into the front passenger seat of the BMW SUV.

15)    Moments later, agents observed PITTS getting out of the BMW SUV, holding an item in his hands, and getting back into the Lincoln. The BMW SUV and the Lincoln then exited the parking lot of the Dollar General. Agents followed the Lincoln and CPD followed the BMW SUV.

16)     CPD followed the BMW SUV to Valero located at 1105 US 60., Friona, Texas. CPD observed Flores getting out of the BMW SUV and confirmed that Flores was the sole occupant of the vehicle. Flores did not meet with anyone else and got gas at the Valero. Shortly thereafter, Flores got back into the BMW SUV and started to travel back to Clovis, New Mexico. CPD followed Flores back to his residence located at 53 Chapparal Ave. Flores did not meet with anyone else and did not make any other stops on his way back to his residence.

17)     At approximately 10:34 p.m., Texas Department of Public Safety (DPS) conducted a traffic stop on the Lincoln for speeding, which is a violation of the Texas Transportation Code. Trooper Johnson made contact with PITTS and advised PITTS the reason for the traffic stop. Trooper Johnson observed PITTS to be extremely nervous and could not stop shaking. PITTS advised Trooper Johnson that PITTS had just left his aunt's house in Friona, Texas.

18)     After the conversation with PITTS, Trooper Johnson observed some criminal indicators leading Trooper Johnson to believe criminal activity was occurring outside the traffic violation. Trooper Johnson asked for consent to search PITTS' vehicle.  PITTS denied consent. Trooper Johnson requested a canine to respond to the traffic stop. Trooper Trevor Topper came to the scene of the traffic stop with his K-9. Trooper Topper deployed his K9 to conduct a free air sniff of the Lincoln. Trooper Topper's K-9 gave a positive alert to present odor of narcotics. Trooper Johnson then conducted a probable cause search of the vehicle. During the search, Trooper Johnson located a plastic bag containing a white powdery substance and a plastic zip top bag containing an off-white crystalline substance. The white powdery substance tested positive for fentanyl and the off-white crystalline substance tested positive for methamphetamine.

19)     PITTS advised he wanted to cooperate with law enforcement. PITTS was transported to the DPS office for an interview. During a Mirandized interview, PITTS advised that he had purchased eight (8) grams of fentanyl for $850 from Wesely Flores. PITTS stated that he purchases 5-6 grams of fentanyl from Flores every two weeks. PITTS advised he started purchasing fentanyl from Flores 4-6 months ago. PITTS stated that VAGROSKY and TAYLOR introduced PITTS to Flores. PITTS advised that he went to Clovis, New Mexico with VAGROSKY and TAYLOR and TAYLOR did not have enough money to pay Flores, so PITTS sent Flores money

through CashApp. PITTS stated he ultimately messaged Flores through CashApp and got Flores' phone number. PITTS advised that he started going to Flores directly and cut VAGROSKY and TAYLOR out. PITTS stated that he did distribute fentanyl with VAGROSKY and TAYLOR but then started to do his own thing. PITTS advised he has about four customers that he distributes fentanyl daily. PITTS stated that he distributes a tenth of a gram for $50-460 to these four customers every day.

20)    On April 8, 2026, during an authorized wire and electronic communication agents intercepted wire communication between TAYLOR and FLORES. TAYLOR advised FLORES that she needed to come see him and had $750. FLORES advised TAYLOR to leave now because FLORES needed to go out of town. TAYLOR told FLORES that she would be on her way.

21)    Agents conducted electronic surveillance and observed TAYLRO and VAGROSKY travel to Clovis, New Mexico. Based on intercepted communications, TAYLOR dropped VAGROSKY off at a gas station and then met FLORES at car wash located at 1321 N. Norris St., Clovis, New Mexico. TAYLOR and VAGROSKY then traveled back to Amarillo. As they traveled back to Amarillo, VAGROSKY texted several customers that he had "pow." "Pow" is a common street term for powdered fentanyl.

22)    On April 9, 2026, during an authorized wire and electronic communication agents intercepted wire communication between VAGROSKY and Chase CRIDER. During the communication VAGROSKY agreed to deliver two points to CRIDER. A "point" is a common street term for a tenth of a gram. VAGROSKY and CRIDER ultimately met at 311 N. Fairmount St. VAGROSKY and CRIDER then began to travel through Amarillo.

23)    Shortly thereafter, agents intercepted a wire communication between VAGROSKY and TAYLOR. VAGROSKY informed TAYLOR that CRIDER had just overdosed.  Vagrosky stated that he used three Narcans to revive Crider and had to call for an ambulance. VAGROSKY explained that the police searched his truck and that he hid the drugs in his sock. VAGROSKY stated that he was on his way home.

24)    Based on the intercepted communications, agents believe that CRIDER had overdosed on the fentanyl VAGROSKY had brought for CRIDER, which ultimately came from FLORES.

25) Officers pulled over Vagrosky's vehicle and took Vagrosky into custody. Officers located a foil consistent with fentanyl use in Vagrosky's sock. Officers also located a small amount of methamphetamine inside the vehicle.

Fernando Burga
DEA Special Agent

Attested to by the applicant in accordance with requirements of Fed. R. Crim. P. 4.1 by telephone:

4|9|2026                    at        Amarillo, TX
Date                                    City and State

Lee Ann Reno U.S. Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

Anna Marie Bell
Assistant U.S. Attorney